# Government's Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

IN THE MATTER OF )
THE EXTRADITION OF )
) Case No. 11-MC-9097
RASEMA HANDANOVIC )

# AFFIDAVIT

I, Paul B. Dean, do hereby state as follows:

1. I am the Assistant Legal Adviser for Treaty Affairs of the United States Department of State, Washington, D.C. The Office of Treaty Affairs maintains the records and oversees the negotiation, conclusion, congressional reporting, and publication of United States treaties and other international agreements, in accordance with the Foreign Affairs Manual, 11 FAM 750, and federal regulations, 22 C.F.R. Part 181.

2. My responsibilities as head of the Department's Office of Treaty Affairs require that I be familiar with the practice of the United States in matters concerning the making, interpretation, and application of treaties and other international agreements. My responsibilities also include maintaining the official treaty records of the United States.

3. According to the official treaty records of the United States, the Extradition Treaty between the United States of America and the Kingdom of Servia ("Servia") ("the Extradition Treaty") was signed at Belgrade on October 25, 1901. The United States Senate gave advice and consent to ratification on January 27, 1902, and the President of the United States ratified the Treaty on March 7, 1902. The Parties exchanged their instruments of ratification on May 13, 1902, and the Treaty entered into force on June 12, 1902, thirty days after the Parties exchanged instruments of ratification.

4. In 1918, Servia became part of the newly formed Kingdom of Serbs, Croats and Slovenes, which included the territory of what is now Bosnia and Herzegovina, and the Extradition Treaty became applicable to that Kingdom consistent with principles of treaty succession. In 1929, the Kingdom of Serbs, Croats and Slovenes was renamed the Kingdom of Yugoslavia, which in 1946 was subsequently renamed the Federal People's Republic of Yugoslavia. These subsequent name changes had no effect on the continued applicability of the Extradition Treaty.

5. In 1954, Rafo Ivancevic, Consul General of the Federal People's Republic of Yugoslavia, filed an appeal, supported by an amicus brief from the United States, from a decision of the U.S. District Court for the Southern District of California denying a request under the 1901 Treaty for the extradition of

Andrija Artukovic on the ground that the treaty was no longer effective. The Court of Appeals for the Ninth Circuit reversed the District Court and, as the United States and the Federal People's Republic of Yugoslavia had argued, found that the Treaty remained in force and that it was "a present, valid and effective treaty between the United States and the Federal People's Republic of Yugoslavia, and ha[d] been a valid and effective treaty continuously since its execution between the United States and Servia and through the changes in official title of the latter state to its present title of the Federal People's Republic of Yugoslavia." <u>Ivancevic v. Artukovic</u>, 211 F.2d 565, 575 (1954).

6. In 1963, the Federal People's Republic of Yugoslavia was renamed the Socialist Federal Republic of Yugoslavia ("SFRY"). As with earlier name changes, this did not affect the continued application of the Extradition Treaty. The SFRY consisted of six constituent republics: Slovenia, Croatia, Serbia, Bosnia-Herzegovina, Montenegro, and Macedonia. Following the dissolution of the SFRY in 1991-1992, Bosnia and Herzegovina became an independent State.

7. In 1992, the United States recognized Bosnia and Herzegovina as an independent State, and the two countries established diplomatic relations. The United States holds the view that there is a general presumption of continuity in treaty relations between the United States and such successor

States with respect to treaties that were in force with its predecessor union. In a letter of April 19, 1992, that related to the recognition of Bosnia and Herzegovina, President Izetbegovic of Bosnia and Herzegovina committed to the Secretary of State that "Bosnia is ready to fulfill the treaty and other obligations of the former SFRY." Therefore, Bosnia and Herzegovina has expressly accepted that it succeeds to the international agreements of the SFRY. Since that time the United States has considered that treaties such as the extradition treaty continue in force between the two countries.

8. By diplomatic note dated August 10, 2010, Bosnia and Herzegovina requested the extradition from the United States of Rasema Handanovic. Bosnia and Herzegovina has also submitted other extradition requests to the United States. On January 18, 2005, the United States District Court for the Southern District of New York found Muhamed Sacirbegovic extraditable to Bosnia and Herzegovina on the basis of the Extradition Treaty (although the United States Court of Appeals for the Second Circuit later granted Mr. Sacirbegovic's petition for habeas corpus on other grounds). On June 28, 2007, the United States District Court for the District of South Dakota found Samir Avdic extraditable to Bosnia and Herzegovina on the basis of the Extradition Treaty. On November 6, 2008, the United States District Court for Minnesota found Zdravko Veletic extraditable to Bosnia and

Herzegovina on the basis of the Extradition Treaty. On December 3, 2008, the United States District Court for the Western District of Michigan found Eset Bilanovic extraditable to Bosnia and Herzegovina on the basis of the Extradition Treaty.

9. On the basis of my review of the record and the foregoing analysis, I conclude that the Extradition Treaty remains in force between the United States and Bosnia and Herzegovina.

10. I declare that the foregoing is true and correct to the best of my knowledge and belief.

July 12, 2011

_____
Paul B. Dean
Assistant Legal Adviser
For Treaty Affairs