IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF RASEMA HANDANOVIC, | MC-11-9097-ST<br><br>OPINION AND ORDER |

STEWART, Magistrate Judge:

## INTRODUCTION

On April 11, 2011, the United States commenced extradition proceedings against Rasema Handanovic ("Handanovic") on behalf of the Government of the Republic of Bosnia and Herzegovina ("Bosnia"). Presently before the court is Handanovic's motion to compel discovery of exculpatory evidence (docket #20). For the reasons set forth below, that motion is denied.

///

///

///

1 - OPINION AND ORDER

**DISCUSSION**

I.   **No Constitutional Right to Discovery**

An extradition hearing is not a criminal proceeding, and the person whose return is sought is not entitled to the rights available in a criminal trial at common law. *Charlton v. Kelly*, 229 US 447, 461 (1913); *Glucksman v. Henkel*, 221 US 508, 512 (1911). The extradition hearing is not a "dress rehearsal" for trial to determine guilt or innocence. *Oen Yin-Chovy v. Robinson,* 858 F2d 1400, 1407 (9th Cir 1988), *cert denied,* 490 US 1106 (1989). The function of the magistrate judge at the extradition hearing is "to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." *Barapind v. Enomoto*, 400 F 3d 744, 752 (9th Cir 2005) (quotation omitted). Consequently, the magistrate judge "does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn v. Robinson,* 783 F2d 776, 815 (9th Cir), *cert denied*, 479 US 886 (1986); *see also, e.g., U.S. ex rel. Sakaguchi v. Kaulukukui,* 520 F2d 726, 730 (9th Cir 1975) ("The magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause . . .").

The defendant's evidence in an extradition proceeding is properly limited to that which explains the requesting country's proof and excludes contradictory or impeaching evidence. *See Charlton,* 229 US at 461-62; *Hooker v. Klein,* 573 F2d 1360, 1368 (9th Cir), *cert denied*, 439 US 932 (1978); *Extradition of Mainero,* 990 F Supp 1208, 1218 (SD Cal 1997). "[A] defendant has no right to cross-examine witnesses or introduce evidence to rebut that of the prosecutor" in

extradition proceedings. *Oen Yin-Choy,* 858 F2d at1407. The "country seeking extradition is not required to produce all its evidence" at the extradition proceedings. *Quinn,* 783 F2d at 815.

While the magistrate judge possesses discretionary power to allow discovery in extradition proceedings, this power is confined to discovery related to whether probable cause exists that the fugitive committed an extraditable offense. *Id* at 817 n41. Thus, "discovery in an international extradition hearing is limited. . . ." *In re Kraiselburd*, 786 F2d 1395, 1399 (9th Cir), *cert denied*, 479 US 990 (1986).

Handanovic asserts that she is entitled to discovery of exculpatory and impeachment evidence required to be disclosed by the government in criminal proceedings. *Brady v. Maryland*, 373 US 83, 87 (1963) (exculpatory evidence); *United States v. Giglio*, 405 US 150, 154-55 (1972) (impeachment evidence of key witnesses). In support, she cites several cases that she claims allow for such discovery in extradition proceedings. In *Demjanjuk v. Petrovsky*, 10 F3d 338, 353-54 (6th Cir 1993), *cert denied*, 513 US 914 (1994), the Sixth Circuit extended *Brady* to "cover denaturalization and extradition cases" and held that the failure of the government to turn over exculpatory evidence violated due process. However, that case was fundamentally different from the facts of this case, and has since been so limited. As later explained by the Sixth Circuit when denying a discovery request for exculpatory evidence in an extradition proceeding:

> This seeming broad language must be read in the context of a case that involved an unusual set of circumstances . . . Specifically, in *Demjanjuk*, the United States had conducted its own investigation of the outcome underlying the request for extradition and uncovered exculpatory material in the course of that effort. No such investigation occurred here; rather, the involvement of the United States can only be characterized as ministerial in the sense that it merely received factual information developed by Canadian authorities.

3 - OPINION AND ORDER

*Extradition of Michael John Drayer*, 190 F3d 410, 414 (6th Cir 1999), *cert denied*, 528 US 1176 (2000).

Here, as in *Drayer*, there is no evidence that United States has conducted its own independent investigation into the events forming the basis for the extradition request, much less that it has uncovered any exculpatory information. Consequently, this case is fundamentally different than *Demjanjuk*, and Handanovic's reliance upon it is misplaced. The government has provided Handanovic with the documentary evidence submitted by Bosnia in support of its extradition request, as well as copies of her immigration file and a fingerprint examiner's report. While the government admits that the extradition request does not contain all of the evidence concerning the charges in the arrest warrant, it does contain the depositions and other evidence upon which Bosnia relies upon to establish probable cause. The government's role in this case is wholly "ministerial," as it has received documents from the Bosnian authorities in support of its extradition request and passed those documents on to Handanovic's counsel. *Drayer*, 190 F3d at 414-15. It is required to do nothing more.

Handanovic also relies upon *Prasoprat v. Benov*, 421 F3d 1009, 1014 (9th Cir 2005), *cert denied*, 546 US 1171 (2006), and *In re Kraiselburd*, for the proposition that the magistrate judge has the authority to order the requesting country to produce exculpatory discovery. Neither case directly addressed that issue, but instead focused upon the scope of discovery during extradition proceedings. *Prasoprat* involved a discovery request seeking information about Thailand's use of the death penalty as punishment for drug-related offenses. 421 F3d at 1012-13. The magistrate judge denied the request and the Ninth Circuit affirmed, holding that the information sought did not relate to an issue within the scope of the extradition judge's authority. *Id* at 1016. In the other

4 - OPINION AND ORDER

case, *In re Kraiselburd*, the magistrate judge denied a blanket discovery request for Argentina's entire investigatory file when it sought to extradite on murder charges. 786 F2d at 1399. Instead, the judge ordered Argentina to produce only a limited subset of documents. *Id.* On appeal, Kraiselburd argued the magistrate judge erred by failing to order Argentina to produce the entire file, but neither side raised the issue of whether the magistrate judge had the authority to order Argentina to produce any documents in the first place. *Id*. The Ninth Circuit also did not reach this issue, rejecting Kraiselburd's argument on the grounds that the magistrate judge properly limited discovery to the issues that were related to whether there was probable cause to tie him to the murders. *Id.*

As held by the Sixth Circuit, the United States "does not have any obligation or authority" to obtain exculpatory discovery on the defendant's behalf, and any dispute over discovery of items in the possession of the country requesting extradition must be pursued in that country. *Drayer*, 19 F3d at 415. Here, Handanovic seeks exculpatory evidence in order to contradict Bosnia's proof of probable cause, which the case law clearly prohibits. *See, e.g., Hooker,* 573 F2d at 1368. Absent any evidence that the United States has conducted its own independent investigation that uncovered exculpatory evidence, the principles articulated in *Demjanjuk* do not apply. Accordingly, Handanovic has no right to discovery of exculpatory material.

**II.    Treaty**

Handanovic also asserts that she is entitled to discovery of the witness statements, depositions, and all other evidence upon which the warrant was obtained based on Article III of the Treaty which provides as follows:

5 - OPINION AND ORDER

> If the person whose extradition is requested shall have been convicted of a crime or offense, a duly authenticated copy of the sentence of the Court in which he has been convicted, or if the fugitive is merely charged with crime, a duly authenticated copy of the warrant of arrest in the country where the crime has been committed, *and of the depositions or other evidence upon which such warrant was issued, shall be produced*.

Treaty between the United States of America and Servia for the Mutual Extradition of Fugitives from Justice, U.S.-Yugo, Oct. 25, 1902, 32 Stat. 1890 (emphasis added).

She interprets this language to require Bosnia to produce *all* of the depositions or other evidence upon which the warrant was issued. Opposing this interpretation, the government cites *Manta v. Chertoff*, 518 F3d 1134, 1144 (9th Cir 2008), which interpreted a treaty with Greece requiring the release of the person provisionally arrested "unless within two months . . . a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent[.]" *Id*. Manta argued that the government's submission of an affidavit identifying her was untimely because it was submitted after the two-month deadline had passed. *Id*. The Ninth Circuit rejected this argument, finding that "the plain language of the Treaty does not require that the government submit *all* of its evidence to support an extradition treaty" within two months of the arrest. *Id* (emphasis in original). *Id.* Such a strict interpretation "would prevent the government from gathering evidence" and "severely limit [its] ability to extradite individuals under the Treaty," which would undermine "the rule that we are to construe extradition treaties liberally." *Id* (citation omitted).

Handanovic attempts to distinguish *Manta* on the basis that the Greek treaty required production of depositions when a warrant "may have been issued," presumably allowing

6 - OPINION AND ORDER

flexibility regarding what documents must be submitted.  On the other hand, she construes the language "upon which the warrant was issued," as it appears in the Treaty here, to require Bosnia to produce all the evidence that forms the basis for the charges in the warrant.  This court disagrees.  The Treaty language relied upon by Handanovic does not contain the word "all."  According to the well-established rule when interpreting an extradition treaty, the magistrate judge must construe a treaty's provisions liberally to favor the obligation to surrender fugitives.  *See Factor v. Laubenheimer,* 290 US 276, 293-94 (1933); *U.S. ex rel. Sakaguchi*, 520 F2d 726 at 731.  Applying this rule, the most logical reading of Article III in the Treaty is to require Bosnia to produce only the evidence which supports probable cause for the charges in the arrest warrant.  *See Escobedo v. United States*, 623 F2d 1098, 1103-1104 (5th Cir 1980).  Here, the notebook of evidence provided by the government includes the redacted testimony of several witnesses.  Nothing in the Treaty requires that Bosnia submit "all" of the evidence upon which the warrant was issued, such as unredacted or other witnesses' testimony, so long as the evidence submitted is sufficient to establish probable cause for the charges.  That determination will be made at the extradition hearing.

To the extent that Handanovic seeks discovery to inquire whether Bosnia seeks to extradite her for an impermissible political purpose, in violation of Article VI of the Treaty, that argument also fails.  It is well settled that "the Secretary of State has sole discretion to determine whether a request for extradition should be denied because it is a subterfuge made for the purpose of punishing the accused for a political crime," and, thus, this inquiry is beyond the purview of the magistrate judge.  *Quinn*, 783 F2d at 789.

Finally, the court declines to address Handanovic's estoppel argument at this time.

7 - OPINION AND ORDER

## ORDER

Because Handanovic has no constitutional right to the production of exculpatory material from Bosnia and the Treaty requires production only of the evidence "upon which the warrant was issued" for the purpose of establishing probable cause, her Motion to Compel Discovery (docket #20) is DENIED.

DATED this 11th day of August, 2011.

                                                            s/ Janice M. Stewart_____
                                                            Janice M. Stewart
                                                            United States Magistrate Judge